IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

SLINGSHOT PRINTING LLC,

                Plaintiff,

       v.

HP INC.,

                Defendant.

C.A. No.  6:19-cv-00362-ADA

**Jury Trial Demanded**

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Slingshot Printing LLC ("Slingshot") files this First Amended Complaint against Defendant HP Inc. ("HP") for patent infringement of United States Patent Nos. 6,243,115; 6,394,593; 6,817,707; 7,438,397 and 7,938,523 (the "patents-in-suit") (Exhibits 1-5) and alleges as follows:

## NATURE OF THE ACTION

1.    This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

## THE PARTIES

2.    Plaintiff Slingshot Printing LLC is a Delaware limited liability company with its principal place of business at 8455 Colesville Road, Suite 830, Silver Spring, MD 20910.

3.    On information and belief, HP Inc. is a Delaware corporation with a place of business at 1501 Page Mill Road, Palo Alto, CA 94304.  On information and belief,

since May 1998, HP has been registered to do business in the State of Texas under Texas

SOS file Number 0012093906.  On information and belief, since at least 2016, HP has had

a place of business at 3800 Quick Hill Rd #100, Austin, TX 78728.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant

to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patents laws of the

United States, 35 U.S.C. §§ 1 *et seq.*

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b),

(c), (d) and/or 1400(b).

6.      HP is subject to this Court's personal jurisdiction, in accordance with due

process and/or the Texas Long Arm Statute because HP "[r]ecruits Texas residents,

directly or through an intermediary located in this state, for employment inside or

outside this state." *See* Tex. Civ. Prac. & Rem. Code § 17.042.

7.      This Court has personal jurisdiction over HP because, on information and

belief, HP and its authorized resellers (or those acting on their behalf) and HP's

customers committed and continue to commit acts of patent infringement in this

judicial district.  On information and belief, HP and its authorized resellers (or those

acting on their behalf) make, use, sell, offer to sell and/or import HP inkjet products

(including, without limitation, infringing inkjet printers, inkjet printheads, ink

cartridges and associated accessories) in this judicial district and provide associated

services in this judicial district.  On information and belief, HP customers use HP inkjet

products (including, without limitation, infringing inkjet printers, inkjet printheads, ink cartridges and associated accessories) in this judicial district.

8.      This Court has personal jurisdiction over HP because, *inter alia*, HP, on information and belief: (1) has committed acts of patent infringement in this judicial district, (2) has substantial, continuous, and systematic business contacts in this judicial district; (3) owns, manages and operates facilities in this judicial district; (4) enjoys substantial income from its operations, sales and services in this judicial district, (5) employs Texas residents in this judicial district and (5) solicits business and markets products and services in this judicial district including infringing products. As such, HP has purposefully availed itself of the privileges of conducting business within this judicial district; has established sufficient minimum contacts with this judicial district such that it should reasonably and fairly anticipate being hauled into court in this judicial district; has purposefully directed activities at residents of this judicial district; and at least a portion of the patent infringement claims alleged in this complaint arise out of or are related to one or more of the foregoing activities.

9.      On information and belief, HP maintains a significant physical presence in this judicial district. Specifically, HP has a corporate office at 3800 Quick Hill Rd #100, Austin, TX 78728 ("Austin Office"). On information and belief, HP has data centers located in Austin, Texas.



Source: Google Streetview of 3800 Quick Hill Road (attached as Exhibit 6)
(https://www.google.com/maps/place/HP+Inc./@30.4703733,-
97.6859262,3a,75y,90t/data=!3m8!1e2!3m6!1sAF1QipNp5EYyUhJS0qXzzgDwzf8UoOVa
hLlBmo2QpSjR!2e10!3e12!6shttps:%2F%2Flh5.googleusercontent.com%2Fp%2FAF1Qip
Np5EYyUhJS0qXzzgDwzf8UoOVahLlBmo2QpSjR%3Dw213-h120-k-
no!7i4000!8i2250!4m13!1m7!3m6!1s0x8644ce11dbcc242d:0x5804b8f52b061c45!2s3800+Qu
ick+Hill+Rd,+Austin,+TX+78728!3b1!8m2!3d30.4708993!4d-
97.6876364!3m4!1s0x8644ce11dbcc242d:0xeceb1885722ffa93!8m2!3d30.4703733!4d-
97.6859262).

     10.     On information and belief, HP uses the Austin Office as a regular and

established place of business. A number of key HP employees work in the Austin Office

including, but not limited to, a Director of IT, a Director of Governmental Affairs, as

well as software and hardware engineers.

     11.     HP's website lists fifty-one H-1B labor condition applications for people

employed in Austin, Texas. *See* Exhibit 7 (http://www.hp.com/hpinfo/). Employees

holding an H-1B visa are employed in a specialty occupation that requires "theoretical

and practical application of a body of highly specialized knowledge . . . and attainment

of a bachelor's or higher degree in the specific specialty. . . ." *See generally* 8 U.S.C. §

1184.  As such, HP employees in Austin, Texas are highly specialized and important to the operation of HP.

12.    HP lists job opening on its website for positions in Austin, Texas.  See Exhibit 8 (https://h30631.www3.hp.com/search-jobs/Austin?orgIds=3544&alp= 6252001-4736286-4671654&alt=4) (as of 9/18/19).



13.    On information and belief, HP owns real estate in the Austin, Texas including properties at (a) 7501 N. Capital of Texas Highway, Austin, TX 78731, (b) 3301

Hibbets Rd, Austin, TX 78721, (c) 14231 Tandem Blvd, Austin, TX 78728 and (d) 14219 Tandem Blvd, Austin, TX 78728.

14.     HP operates the HP Partners First Program throughout the United States including in this judicial district. *See generally,* Exhibit 9 (HP Partners First Program Brochure).  This program is a partnership agreement between HP and retailers throughout the area that "is focused on being first in sales, speed and solutions, offering a comprehensive framework that encompasses a broad range of partner motions."



*See* Exhibit 9 at page 10.

15.     The HP Partners First Program includes three tiers of partnership: Silver, Gold, and Platinum. At every level, the partners are required to enter into a formal Partner agreement with HP and provide sales certified printing, computing and supplies.  *Id.* at 11.  HP provides market development funds to Platinum members. *Id.* at 15. According to HP, "HP places great value in partnership with reseller partners contributing significantly towards HP's business revenue. Visibility of partner's

business are critical component towards fine-tuning of collaborative sales effort." *Id* at 44.

16.     Through the HP Partners First Program, HP has hundreds of partners physically located throughout this judicial district including, but not limited to, HP partners in Waco, Austin, and San Antonio.  HP's website provides existing and potential customers with the ability to search for resellers based on cities or zip codes in this judicial district.   A search on HP's website for Waco, Austin, and San Antonio provides the names and locations of numerous HP resellers:



Austin, Texas



Waco, Texas



San Antonio, Texas

17.    A search of the Austin, Texas area returns results for at least fifty-nine

partners participating in the HP Partners First Program. Fifteen of those partners are

platinum partners who offer HP computing, printing, services and supplies to consumers in the Austin area. A search of the Waco, Texas area returns results for at least seven partners participating in the HP Partners First Program. All of those partners are Silver partners of the HP Partners First Program, and at least one of those silver members offers HP computing, printing and supplies to consumers in the Waco area.  A search of the San Antonio, Texas area returns results for at least fifty-five partners participating in the HP Partners First Program.  Seventeen of those partners are platinum partners who offer HP computing, printing, services and supplies to consumers in the San Antonio area.

18.     ImageNet Consulting LLC is listed as a Platinum Partner selling printing services in Austin:



According to ImageNet Consulting LLC's website, the company offers several printers for sale including the HP PageWide Pro MFP P57750 and HP PageWide Managed E55650dn.  *See* Exhibit 10 (http://www.imagenetconsulting.com/products/copiers-printers-scanners/workteam-printers/).

19.     Texexpro LLC is listed as a Silver Partner selling printing services in

Waco:



According to Texexpro LLC's website, the company offers several printers for sale

including the HP OfficeJet 4650. *See* Exhibit 11 ([https://www.texexpro.com/copy-of-](https://www.texexpro.com/copy-of-products)

[products](https://www.texexpro.com/copy-of-products)).

20.     ARC Document Solutions LLC is listed as a Platinum Partner selling

printing services in San Antonio:



According to Arc Document Solutions LLC's website, the company offers several

printers for sale including the HP PageWide Enterprise Color 556dn Color Printer, HP

PageWide Pro 750dw Color Printer, and the HP PageWide Pro 452dw Color Printer. *See*

Exhibit 12 (http://shop.arcsupplies.com/store/c-527-ink-printers.aspx).

21.     Consumers in this judicial district are also able to purchase infringing

inkjet printers, inkjet printheads and ink cartridges directly from HP through its online

website and have products delivered in this judicial district.

https://store.hp.com/us/en.

22.     HP sells its products including, without limitation, infringing inkjet

printers, inkjet printheads and ink cartridges through stores located in this judicial

district such as Best Buy, S.P. Richards Co., Staples Inc. and Frys Electronics.

23.     On information and belief, HP has previously litigated patent

infringement cases before this Court without contesting jurisdiction and venue.  *See*

*Neodron, Ltd. v. HP Inc.,* Case No. 1:19-cv-00873-ADA and *Iron Oak Technologies, LLC v.*

*HP Inc.*, Case No. 17-cv-1068, W.D. Texas.

## BACKGROUND

## The Patents-in-Suit

24.     The patents-in-suit are the result of Lexmark International, Inc.'s

("Lexmark") many years of researching, designing and developing innovative and

proprietary inkjet printing technologies.

25.     Lexmark was formed in 1991 when IBM divested a number of its

hardware manufacturing operations. Lexmark became a leading developer,

manufacturer and supplier of inkjet printers, ink cartridges and their associated

supplies and services.

26.     Lexmark's research and development activity focused on, *inter alia*, inkjet printers, ink cartridges and printer supplies. Lexmark spent billions of dollars on research and development – $375 million in 2009, $423 million in 2008, $401 million in 2007, $371 million in 2006, $336 million in 2005, $312 million in 2004, $266 million in 2003, $247 million in 2002, $246 million in 2001, $217 million in 2000, and $184 million in 1999.

27.     By April 2013, Lexmark held approximately 1,500 inkjet patents worldwide.  Indeed, Lexmark's intellectual property was one of its major assets. Recognizing the tremendous value of Lexmark's intellectual property, in 2013, Funai Electric Co., Ltd. ("Funai") acquired Lexmark's inkjet printing technology and assets, including the patents-in-suit, for approximately $100 million.

28.     Funai subsequently assigned Slingshot all rights, title and interest in the patents-in-suit.

**Inkjet Printer Technology**

29.     The patents-in-suit relate to inkjet printer technology.

30.     Inkjet printers have one or more printheads and multiple ink cartridges. The ink cartridges store different colors of ink (e.g., black, magenta, yellow, cyan) and provide the ink to the printhead(s) during printing.

31.     Each printhead has hundreds of microscopic nozzles through which microscopic ink droplets are deposited onto a substrate (e.g., paper) during printing.  In particular, the printhead is located on a carriage that moves back and forth across the substrate and deposits ink on the substrate as the substrate advances through the

printer. For certain printers, the printhead is located on the ink cartridges themselves. For other printers, the printhead(s) are separate from the ink cartridges.

## United States Patent No. 6,243,115

32.     On June 5, 2001, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 6,243,115 ("the '115 patent") entitled "Pressurized ink supply and delivery system for an ink jet printer" to inventors Ronald W. Baker, Phillip J. Heink, Jeffrey L. Richie, and Donald W. Stafford. A true and correct copy of the '115 patent is attached as Exhibit 1.

33.     The '115 patent relates to, among other things, an ink supply and delivery system for a printer cartridge.

34.     The '115 patent is presumed valid under 35 U.S.C. § 282.

35.     Slingshot owns all rights, title and interest in the '115 patent.

## United States Patent No. 6,394,593

36.     On May 28, 2002, the USPTO duly and legally issued United States Patent No. 6,394,593 ("the '593 patent") entitled "Vent system for ink jet pen having internal pressure regulator" to inventors Steven R. Komplin and James H. Powers. A true and correct copy of the '593 patent is attached as Exhibit 2.

37.     The '593 patent relates to, among other things, an ink cartridge for an inkjet printer.

38.     The '593 patent is presumed valid under 35 U.S.C. § 282.

39.     Slingshot owns all rights, title and interest in the '593 patent.

## United States Patent No. 6,817,707

40.     On November 16, 2004, the USPTO duly and legally issued United States Patent No. 6,817,707 ("the '707 patent") entitled "Pressure controlled ink jet printhead assembly" to inventors John R. Fowler, Timothy L. Howard, Matthew J. Russell, and Jon B. Whitney. A true and correct copy of the '707 patent is attached as Exhibit 3.

41.     The '707 patent relates to, among other things, an inkjet printhead assembly for a pressure controlled ink jet printhead.

42.     The '707 patent is presumed valid under 35 U.S.C. § 282.

43.     Slingshot owns all rights, title and interest in the '707 patent.

## United States Patent No. 7,438,397

44.     On October 21, 2008, the USPTO duly and legally issued United States Patent No. 7,438,397 ("the '397 patent") entitled "Methods and devices for purging gases from an ink reservoir" to inventors James D. Anderson Jr., David E. Greer and Matthew J. Russell.  A true and correct copy of the '397 patent is attached as Exhibit 4.

45.     The '397 patent relates to, amongst other things, a method of increasing the longevity of a printhead.

46.     The '397 patent is presumed valid under 35 U.S.C. § 282.

47.     Slingshot owns all rights, title and interest in the '397 patent.

## United States Patent No. 7,938,523

48.     On May 10, 2011, the USPTO duly and legally issued United States Patent No. 7,938,523 ("the '523 patent") entitled "Fluid supply tank ventilation for a micro-

fluid ejection head" to inventor Charles S. Aldrich. A true and correct copy of the '523 patent is attached as Exhibit 5.

49.     The '523 patent relates to, among other things, a fluid supply tank for a micro-fluid ejection head.

50.     The '523 patent is presumed valid under 35 U.S.C. § 282.

51.     Slingshot owns all rights, title and interest in the '523 patent.

### CLAIMS FOR RELIEF

### Count I – Infringement of United States Patent No. 6,243,115

52.     The allegations set forth above are re-alleged and incorporated by reference as if they were set forth fully here.

53.     HP makes, uses, sells, offers to sell and/or imports inkjet printers and ink cartridges in the United States that infringe (literally and/or under the doctrine of equivalents) at least claims 1, 3, 5 and 6 of the '115 patent. HP commits acts of patent infringement through the manufacture, use, sale, offer for sale and/or importation of at least the following products:

**Inkjet printers** including, without limitation, HP Officejet 6100 ePrinter, 6600 H711a, 6700 Premium H711n, 7110 Wide Format ePrinter, 7510 Wide Format, 7610 Wide Format, 7612 Wide Format; HP OfficeJet Pro 276dw MFP, 8600-N911g, 8600-N911n, 8600-N911a, 8610, 8620, 251dw, 8100-N811a, 8630; HP OfficeJet Pro 7720, 7730, 7740, 8210, 8216, 8702, 8710, 8715, 8720, 8725, 8728, 8730, 8740, 8745; HP OfficeJet Pro 9025, 9020, 9018, 9015, 9010; HP OfficeJet Pro Premier; HP OfficeJet 9012; HP Officejet Pro X451dn, X451dw, X476dn MFP, X476dw MFP,

X551dw, X576dw MFP; HP PageWide Pro 452dn, 452dw, 452dwt, 477dn, 477dw, 477dwt, 552dw, 552dwt, 577dw, 577z; HP OfficeJet Enterprise Color MFP X585dn, MFP X585f, X555dn, X555xh; HP OfficeJet Enterprise Color Flow MFP X585z; HP OfficeJet Managed Color MFP X585dnm; HP PageWide Enterprise Color 556dn, 556xh, MFP 586dn, MFP 586f; HP PageWide Enterprise Color Flow MFP 586z, HP PageWide Managed Color E55650dn, MFP E58650dn.

**Ink cartridges**, including without limitation, HP 932, HP 932XL, HP 933, HP 933XL, HP 950, HP 950XL, HP 951, HP 951XL, HP 952, HP 952XL, HP 956XL, HP 962, HP 962XL, HP 966XL, HP 970, HP 970XL, HP 971, HP 971XL, HP 972, HP 972A, HP 972X, HP 976Y, HP 980, HP 981A, HP 981X, HP 981Y (setup and non-setup/replacement cartridges).

54.     On information and belief, inkjet printers listed above are sold with setup ink cartridges that have a limited supply of ink. On information and belief, setup ink cartridges are used for initial configuration/calibration and/or proper operation of the printer. On information and belief, for inkjet printers that come with setup ink cartridges, a user must use a setup ink cartridge the first time that the printer is turned on/initialized. Setup ink cartridges are marked with the word "Setup" and, in some cases, identify non-setup/replacement ink cartridge(s) that should be used with an inkjet printer once the ink in the setup ink cartridge has been depleted.  Exemplary setup ink cartridges are shown below.

16





55.     Setup ink cartridges are structurally similar to non-setup/replacement ink cartridges.   On information and belief, once a setup ink cartridge has been used to configure/calibrate a printer, another setup ink cartridge cannot subsequently be used in the printer.  After the ink in the setup ink cartridge is depleted, customers must buy and use non-setup/replacement cartridges to continue to use the printer.

56.     On information and belief, with regard to the claim elements of the '115 patent, the HP 932XL, HP 933, HP 933XL, HP 950, HP 950XL, HP 951, HP 951XL, HP 952, HP 952XL, HP 956XL, HP 962, HP 962XL, and HP 966XL color ink cartridges are structurally similar to each other and black ink cartridges are structurally similar to

each other.  On information and belief, with regard to the claim elements of the '115 patent, the HP 932 is structurally similar to the color ink cartridges. On information and belief, with regard to the claim elements of the '115 patent, the HP 970, HP 970XL, HP 971, HP 971XL, HP 972, HP 972A, HP 972X, HP 976Y, HP 980, HP 981A, HP 981X and HP 981Y are structurally similar to each other.  Infringement of the '115 patent by the ink cartridges and associated inkjet printers is demonstrated below using the HP 972 and HP 952 ink cartridges and associated inkjet printers as examples.

57.     The ink cartridges can be purchased separately from the inkjet printer. The ink cartridges are necessary for the operation of the inkjet printers and vice versa.

58.     HP makes, uses, sells, offers to sell and/or imports an ink supply and delivery system (e.g., HP PageWide Pro MFP 477dw ("HP PageWide Pro")) for a printer cartridge (e.g., HP 972).







59.     The HP 972 has an interior, at least one air inlet to the interior, and at least one ink outlet from the interior.



60.     The HP PageWide Pro has an air pump connected to the air inlet for creating a positive pressure in the interior of the printer cartridge.



61.   As shown below, when the tube from the air pump of the HP PageWide

Pro is submerged in water and the air pump is turned on, bubbles form in the water.



62.   The HP PageWide Pro/HP 972 has an ink source including ink in the

interior of the printer cartridge and in fluid communication with the ink outlet.



63.     The HP 972 has a resilient air container (air bag) in its interior.  The air

container is in fluid communication with the air inlet.



64.     The air container of the HP 972 expands from the positive pressure

created by the air pump for forcing the ink from the ink source through the ink outlet.

65.     The ink source of the HP 972 is a resilient container in fluid

communication with the ink outlet of the printer cartridge.

66.    The HP 972 includes an air vent from its interior.



67.    The air container is positioned within the ink source container.



68.    HP makes, uses, sells, offers to sell and/or imports an ink supply and delivery system (e.g., HP OfficeJet Pro 7740 ("HP OfficeJet Pro")) for a printer cartridge (e.g., HP 952).





69.     The HP 952 has an interior, at least one air inlet to the interior, and at least

one ink outlet from the interior.



70.     The HP OfficeJet Pro has an air pump connected to the air inlet for

creating a positive pressure in the interior of the printer cartridge.



71.    As shown below, when the tube from the air pump of the HP OfficeJet Pro is submerged in water and the air pump is turned on, bubbles form in the water.



72.     The HP OfficeJet Pro/HP 952 has an ink source including ink in the interior of the printer cartridge and in fluid communication with the ink outlet.



73.     The HP 952 has a resilient air container (air bag) in its interior.  The air container is in fluid communication with the air inlet.





74.     The air container of the HP 952 expands from the positive pressure created by the air pump for forcing the ink from the ink source through the ink outlet.

75.     The ink source is a resilient container in fluid communication with the ink outlet of the printer cartridge.

76.     The HP 952 includes an air vent from its interior.



77.     The air container is positioned within the ink source container.



78.     On information and belief, HP has been on notice of the '115 patent at least as early as the filing and service of the Complaint in this action.

79.     On information and belief, at least since its post-filing knowledge of the '115 patent, HP knowingly encourages, and continues to encourage, customers and

resellers to directly infringe one or more claims of the '115 patent, including by HP's actions that include, without limitation, instructing and encouraging customers to use (and resellers to use, sell and offer to sell) HP inkjet printers and ink cartridges through HP's user guides/manuals, advertisement, promotional materials and instructions.

80.     On information and belief, at least since its post-filing knowledge of the '115 patent, HP knows that the acts HP induced customers and resellers to take constitute patent infringement and HP's encouraging acts result in direct infringement by customers and resellers.

81.     On information and belief, HP instructs and continues to instruct customers and resellers to setup, use and troubleshoot HP inkjet printers and ink cartridges including, without limitation, on HP's website which provides support on setting up and/or using these products.

82.     On information and belief, HP's customers directly infringe at least claims 1, 3, 5 and 6 of the '115 patent through their setup and use of HP inkjet printers and ink cartridges.

83.     On information and belief, HP's resellers directly infringe at least claims 1, 3, 5 and 6 of the '115 patent through their setup, use, sale and offer for sale of HP inkjet printers and ink cartridges.

84.     On information and belief, HP is in violation of 35 U.S.C. § 271(b) and has been, at least since its post-filing knowledge of the '115 patent, indirectly infringing and continues to indirectly infringe at least claims 1, 3, 5 and 6 of the '115 patent by knowingly and specifically intending to induce infringement by others (including,

without limitation, HP's customers and resellers) and possessing specific intent to encourage infringement by HP's customers and resellers.  HP inkjet printers and ink cartridges are specifically configured according to the claims of the '115 patent, are material parts of the invention, and do not have substantial non-infringing uses.

85.     Slingshot has been damaged by the direct and/or indirect infringement of HP and is suffering and will continue to suffer irreparable harm and damages as a result of this infringement.

### Count II – Infringement of United States Patent No. 6,394,593

86.     The allegations set forth above are re-alleged and incorporated by reference as if they were set forth fully here.

87.     HP makes, uses, sells, offers to sell and/or imports inkjet printers and ink cartridges in the United States that infringe (literally and/or under the doctrine of equivalents) at least claims 1-3, 5, 6, 12-14 and 16-18 of the '593 patent.  HP commits acts of patent infringement through the manufacture, use, sale, offer for sale and/or importation of at least the following products:

**Inkjet printers** including, without limitation, HP Officejet 6100 ePrinter, 6600 H711a, 6700 Premium H711n, 7110 Wide Format ePrinter, 7510 Wide Format, 7610 Wide Format, 7612 Wide Format; HP OfficeJet Pro 276dw MFP, 8600-N911g, 8600-N911n, 8600-N911a, 8610, 8620, 251dw, 8100-N811a, 8630; HP OfficeJet Pro 7720, 7730, 7740, 8210, 8216, 8702, 8710, 8715, 8720, 8725, 8728, 8730, 8740, 8745; HP OfficeJet Pro 9025, 9020, 9018, 9015, 9010; HP OfficeJet Pro Premier; HP OfficeJet 9012; HP Officejet Pro X451dn, X451dw, X476dn MFP, X476dw MFP,

X551dw, X576dw MFP; HP PageWide Pro 452dn, 452dw, 452dwt, 477dn, 477dw, 477dwt, 552dw, 552dwt, 577dw, 577z; HP OfficeJet Enterprise Color MFP X585dn, MFP X585f, X555dn, X555xh; HP OfficeJet Enterprise Color Flow MFP X585z; HP OfficeJet Managed Color MFP X585dnm; HP PageWide Enterprise Color 556dn, 556xh, MFP 586dn, MFP 586f; HP PageWide Enterprise Color Flow MFP 586z, HP PageWide Managed Color E55650dn, MFP E58650dn.

**Ink cartridges**, including without limitation, HP 932, HP 932XL, HP 933, HP 933XL, HP 950, HP 950XL, HP 951, HP 951XL, HP 952, HP 952XL, HP 956XL, HP 962, HP 962XL, HP 966XL, HP 970, HP 970XL, HP 971, HP 971XL, HP 972, HP 972A, HP 972X, HP 976Y, HP 980, HP 981A, HP 981X, HP 981Y (setup and non-setup/replacement cartridges).

88.     On information and belief, inkjet printers listed above are sold with setup ink cartridges that have a limited supply of ink.  On information and belief, setup ink cartridges are used for initial configuration/calibration and/or proper operation of the printer.  On information and belief, for inkjet printers that come with setup ink cartridges, a user must use a setup ink cartridge the first time that the printer is turned on/initialized.  Setup ink cartridges are marked with the word "Setup" and, in some cases, identify non-setup/replacement ink cartridge(s) that should be used with an inkjet printer once the ink in the setup ink cartridge has been depleted.  Exemplary setup ink cartridges are shown below.





89.     Setup ink cartridges are structurally similar to non-setup/replacement ink cartridges.   On information and belief, once a setup ink cartridge has been used to configure/calibrate a printer, another setup ink cartridge cannot subsequently be used in the printer.   After the ink in the setup ink cartridge is depleted, customers must buy and use non-setup/replacement cartridges to continue to use the printer.

90.     On information and belief, with regard to the claim elements of the '593 patent, the HP 932XL, HP 933, HP 933XL, HP 950, HP 950XL, HP 951, HP 951XL, HP 952, HP 952XL, HP 956XL, HP 962, HP 962XL, and HP 966XL color ink cartridges are structurally similar to each other and black ink cartridges are structurally similar to

each other.   On information and belief, with regard to the claim elements of the '593 patent, the HP 932 is structurally similar to the color ink cartridges.  On information and belief, with regard to the claim elements of the '593 patent, the HP 970, HP 970XL, HP 971, HP 971XL, HP 972, HP 972A, HP 972X, HP 976Y, HP 980, HP 981A, HP 981X and HP 981Y are structurally similar to each other.  Infringement of the '593 patent by the ink cartridges and associated inkjet printers is demonstrated below using the HP 972 and HP 952 ink cartridges and associated inkjet printers as examples.

91.    The ink cartridges can be purchased separately from the inkjet printer. The ink cartridges are necessary for the operation of the inkjet printers and vice versa.

92.    HP makes, uses, sells, offers to sell and/or imports an ink cartridge (e.g., HP 972) for an ink jet printer (e.g., HP PageWide Pro 477).  The HP 972 has a body portion.



93.    The body portion of the HP 972 has a first panel portion having an interior surface opposite an exterior surface exposed to an atmosphere having an atmospheric pressure.



94.     The body portion of the HP 972 has a second panel portion attachable to the body portion to define a cavity for containing ink between the first panel portion and the second panel portion.



95.     The body portion of the HP 972 has a chamber (air chamber inside an air bag) defined within the cavity adjacent the interior surface of the first panel portion of the body portion.  The HP 972 has a lung type pressure regulator (air bag) disposed within the cavity adjacent the chamber.



96.     The HP 972 has an air diffusion path for providing flow communication between the chamber and the atmosphere.  The air diffusion path comprises an elongate flow path defined on the first panel portion of the body portion.  The flow path has a first end in flow communication with the chamber and a second end located on the exterior surface of the first panel portion of the body and in flow communication with the atmosphere.



97.     The flow path of the HP 972 enables air flow communication between the chamber and the atmosphere while substantially inhibiting flow of water vapor out of the chamber.

98.     The flow path of the HP 972 comprises a channel on the exterior surface of the first panel portion of the body portion.  The channel has a first end and a second end, the first end including an aperture extending between the interior and exterior surfaces of the first panel portion.





99.     The HP 972 has a substantially liquid and gas impermeable cover

positioned over all portions of the channel except a terminal portion adjacent the second

end of the channel.



100.    The ratio of flow path length to flow path cross-sectional area of the HP 972 is about 34 mm$^{-1}$ – i.e., between about 20 mm$^{-1}$ to about 6000 mm$^{-1}$.

101.    HP makes, uses, sells, offers to sell and/or imports an ink cartridge (e.g., HP 952 color cartridges ("HP 952 Color")) for an ink jet printer (e.g., HP OfficeJet Pro 7740).  The HP 952 Color has a body portion.



102.    The body portion of the HP 952 Color has a first panel portion having an interior surface opposite an exterior surface exposed to an atmosphere having an atmospheric pressure.

37





103.    The body portion of the HP 952 Color has a second panel portion attachable to the body portion to define a cavity for containing ink between the first panel portion and the second panel portion.



104.     The body portion of the HP 952 Color has a chamber (air chamber inside an air bag) defined within the cavity adjacent the interior surface of the first panel portion of the body portion.  The HP 952 Color has a lung type pressure regulator (air bag) disposed within the cavity adjacent the chamber.



105.     The HP 952 Color has an air diffusion path for providing flow communication between the chamber and the atmosphere.  The air diffusion path comprises an elongate flow path defined on the first panel portion of the body portion. The flow path has a first end in flow communication with the chamber and a second end located on the exterior surface of the first panel portion of the body and in flow communication with the atmosphere.



106.     The flow path of the HP 952 Color enables air flow communication between the chamber and the atmosphere while substantially inhibiting flow of water vapor out of the chamber.

107.     The flow path of the HP 952 Color comprises a channel on the exterior surface of the first panel portion of the body portion.  The channel has a first end and a second end, the first end including an aperture extending between the interior and exterior surfaces of the first panel portion.



108.    The HP 952 Color has a substantially liquid and gas impermeable cover (plastic label) positioned over all portions of the channel except a terminal portion adjacent the second end of the channel.



109.    The flow path of the HP 952 Color has a cross-section area of about 0.99 mm$^2$ (HP 952 setup – Cyan) and 0.91 mm$^2$ (HP 952XL – Magenta) – from about 0.1 to about 2.0 mm$^2$.

110.    The ratio of flow path length to flow path cross-sectional area of the HP 952 Color is about 58 mm$^{-1}$ (HP 952 setup – Cyan) and 51 mm$^{-1}$ (HP 952XL – Magenta) – from about 20 mm$^{-1}$ to about 6000 mm$^{-1}$.

111.    The HP 952 Color has an exterior portion and an interior portion, and a pressure regulator (air bag) within the interior portion including a chamber associated therewith.

112.    The HP 952 Color has a vent system provided by an elongated air flow path defined on an exterior surface of the HP 952 Color.  The flow path has a first end that is in flow communication with the chamber of the internal pressure regulator (air bag).  The flow path has a second end in flow communication with the exterior surface of the HP 952 Color.

113.    The vent system of the HP 952 Color is configured to substantially inhibit water vapor flow to the exterior of the HP 952 Color from the chamber of the pressure regulator (air bag).

114.    The flow path comprises a channel on the exterior of the HP 952 Color, the channel having a first end and a second end.  The first end has an aperture.  The aperture extends between the exterior of the HP 952 Color and the chamber.

115.    The flow path of the HP 952 Color is substantially serpentine.



116.    The cover (plastic label) of the HP 952 Color is a flexible sheet material.

117.    HP makes, uses, sells, offers to sell and/or imports an ink cartridge (e.g., HP 952 black cartridges ("HP 952 Black")) for an ink jet printer (e.g., HP OfficeJet Pro 7740).  The HP 952 Black has a body portion.



118.    The body portion of the HP 952 Black has a first panel portion having an interior surface opposite an exterior surface exposed to an atmosphere having an atmospheric pressure.





119.    The body portion of the HP 952 Black has a second panel portion attachable to the body portion to define a cavity for containing ink between the first panel portion and the second panel portion.



120.    The body portion of the HP 952 Black has a chamber (air chamber inside an air bag) defined within the cavity adjacent the interior surface of the first panel portion of the body portion.  The HP 952 Black has a lung type pressure regulator (air bag) disposed within the cavity adjacent the chamber.



121.    The HP 952 Black has an air diffusion path for providing flow communication between the chamber and the atmosphere.  The air diffusion path comprises an elongate flow path defined on the first panel portion of the body portion. The flow path has a first end in flow communication with the chamber and a second end located on the exterior surface of the first panel portion of the body and in flow communication with the atmosphere.



122.    The flow path of the HP 952 Black enables air flow communication between the chamber and the atmosphere while substantially inhibiting flow of water vapor out of the chamber.

123.    The flow path of the HP 952 Black comprises a channel on the exterior surface of the first panel portion of the body portion.  The channel has a first end and a second end, the first end including an aperture extending between the interior and exterior surfaces of the first panel portion.





124.    The HP 952 Black has a substantially liquid and gas impermeable cover

positioned over all portions of the channel except a terminal portion adjacent the second

end of the channel.



125.    The flow path of the HP 952 Black has a cross-sectional area of about 1.5 mm$^2$ – from about 0.1 to about 2.0 mm$^2$.

126.    The ratio of flow path length to flow path cross-sectional area of the HP 952 Black is about 23 mm$^{-1}$ – i.e., between about 20 mm$^{-1}$ to about 6000 mm$^{-1}$.

127.    On information and belief, HP has been on notice of the '593 patent at least as early as the filing and service of the Complaint in this action.

128.    On information and belief, at least since its post-filing knowledge of the '593 patent, HP knowingly encourages, and continues to encourage, customers and resellers to directly infringe one or more claims of the '593 patent, including by HP's actions that include, without limitation, instructing and encouraging customers to use (and resellers to use, sell and offer to sell) HP inkjet printers and ink cartridges through HP's user guides/manuals, advertisement, promotional materials and instructions.

129.    On information and belief, at least since its post-filing knowledge of the '593 patent, HP knows that the acts HP induced customers and resellers to take

constitute patent infringement and HP's encouraging acts result in direct infringement by customers and resellers.

130.    On information and belief, HP instructs and continues to instruct customers and resellers to setup, use and troubleshoot HP inkjet printers and ink cartridges including, without limitation, on HP's website which provides support on setting up and/or using these products.

131.    On information and belief, HP's customers directly infringe at least claims 1-3, 5, 6, 12-14 and 16-18 of the '593 patent through their setup and use of HP inkjet printers and ink cartridges.

132.    On information and belief, HP's resellers directly infringe at least claims 1-3, 5, 6, 12-14 and 16-18 of the '593 patent through their setup, use, sale and offer for sale of HP inkjet printers and ink cartridges.

133.    On information and belief, HP is in violation of 35 U.S.C. § 271(b) and has been, at least since its post-filing knowledge of the '593 patent, indirectly infringing and continues to indirectly infringe at least claims 1-3, 5, 6, 12-14 and 16-18 of the '593 patent by knowingly and specifically intending to induce infringement by others (including, without limitation, HP's customers and resellers) and possessing specific intent to encourage infringement by HP's customers and resellers.  HP ink cartridges are specifically configured according to the claims of the '593 patent, are material parts of the invention, and do not have substantial non-infringing uses.

134.    Slingshot has been damaged by the direct and/or indirect infringement of HP and is suffering and will continue to suffer irreparable harm and damages as a result of this infringement.

### Count III – Infringement of United States Patent No. 6,817,707

135.    The allegations set forth above are re-alleged and incorporated by reference as if they were set forth fully here.

136.    HP makes, uses, sells, offers to sell and/or imports inkjet printers and inkjet printheads in the United States that infringe (literally and/or under the doctrine of equivalents) at least claims 1, 5 and 6 of the '707 patent. HP commits acts of patent infringement through the manufacture, use, sale, offer for sale and/or importation of at least the following products:

**Inkjet printers** including, without limitation, HP DesignJet Z3100, Z3100ps GP, Z3200, Z3200ps; HP Designjet T610, T620, T770, T790, T1100, T1100 Multifunction, T1100ps, T1120, T1120 HD, T1120 SD, T1120ps, T1200, T1200 HD, T1300, T2300 eMultifunction, T2300 PostScript; HP DesignJet Z3200 Series Printers; HP OfficeJet Pro K5400, K5400dn, K5400dtn, K5400tn, K5400n, K8600, L7580, L7590, L7680, L7780, K550 Color, K550dtn Color, K550dtwn Color; HP DesignJet Z6100; HP DesignJet T1700dr 44-in PostScript; HP DesignJet T1700 44-in; HP DesignJet Z9+ 24-in PostScript; HP DesignJet Z6 44-in PostScript; HP DesignJet Z6 24-in PostScript; HP DesignJet Z9+ 44-in PostScript; HP DesignJet T7100, T7200; HP DesignJet Z6200, Z6600, Z6610, Z6800, Z6810; HP Latex 115, 210, 260, 280, 310, 315, 330, 335, 360, 365, 560, 570, 1500, 3200, 3600, 3800; HP

Latex R1000, R2000 Plus; HP DesignJet L26100, L26500, L28500; OfficeJet Pro 8500, 8500 Plus, 8500 Premier, 8500 Premium, 8500 Wireless, 8500A, 8000, 8000 Enterprise, 8000 Wireless.

**Inkjet printheads** including, without limitation, HP 70, HP 72, HP 73, HP 88, HP 91, HP 731, HP 746, HP 761, HP 771, HP 774, HP 792, HP 831, HP 881, HP 886, HP 940.

137.    On information and belief, with regard to the claim elements of the '707 patent, the HP 70, HP 72, HP 73, HP 88, HP 91, HP 731, HP 746, HP 761, HP 771, HP 774, HP 792, HP 831, HP 881, HP 886 and HP 940 printheads are structurally similar to each other.  Infringement of the '707 patent by the inkjet printers and inkjet printheads is demonstrated below using the HP 831 printhead as an example.

138.    On information and belief, the inkjet printers listed above are sold with inkjet printheads and ink cartridges.  The inkjet printheads and ink cartridges can also be purchased separately from the inkjet printer.  The inkjet printheads and ink cartridges are necessary for the operation of the inkjet printers and vice versa.

139.    HP makes, uses, sells, offers to sell and/or imports an ink jet printhead assembly for a pressure controlled ink jet printhead (e.g., HP 831 Printhead).



140.    The HP 831 Printhead has an ink reservoir having an open top cavity

defined by sidewalls, a bottom wall and a peripheral edge.



141.    The ink reservoir is made of a first material having a first melting point –

about 267ºC.



142.    The HP 831 Printhead has a pressure control structure having a first surface, a second surface opposite the first surface, a side surface and an aperture.  The aperture extends through the pressure control structure from the first surface to the second surface.



143.    The pressure control structure is made of a polymeric material that has a second melting point – 153°C – which is lower than the first melting point.



144.    The HP 831 Printhead has a sealing structure (ring) for forming a liquid tight seal between the sidewalls of the ink reservoir and the side surface of the pressure control structure.



145.    The HP 831 Printhead has a pressure regulating film (air bag structure) attached to the first surface of the pressure control structure closing the aperture.





146.    The HP 831 Printhead has a cover attached to the ink reservoir to protect

the pressure regulating film from damage.



147.    The sealing structure of the HP 831 Printhead includes an elastomeric o-

ring.



148.    The HP 831 Printhead has a semiconductor substrate and nozzle plate attached to the bottom wall of the ink reservoir.



149.    On information and belief, HP has been on notice of the '707 patent at least as early as the filing and service of the Complaint in this action.

150.     On information and belief, at least since its post-filing knowledge of the '707 patent, HP knowingly encourages, and continues to encourage, customers and resellers to directly infringe one or more claims of the '707 patent, including by HP's actions that include, without limitation, instructing and encouraging customers to use (and resellers to use, sell and offer to sell) HP inkjet printers and inkjet printheads through HP's user guides/manuals, advertisement, promotional materials and instructions.

151.    On information and belief, at least since its post-filing knowledge of the '707 patent, HP knows that the acts HP induced customers and resellers to take constitute patent infringement and HP's encouraging acts result in direct infringement by customers and resellers.

152.    On information and belief, HP instructs and continues to instruct customers and resellers to setup, use and troubleshoot HP inkjet printers and inkjet printheads including, without limitation, on HP's website which provides support on setting up and/or using these products.

153.    On information and belief, HP's customers directly infringe at least claims 1, 5 and 6 of the '707 patent through their setup and use of HP inkjet printers and inkjet printheads.

154.    On information and belief, HP's resellers directly infringe at least claims 1, 5 and 6 of the '707 patent through their setup, use, sale and offer for sale of HP inkjet printers and inkjet printheads.

155.    On information and belief, HP is in violation of 35 U.S.C. § 271(b) and has been, at least since its post-filing knowledge of the '707 patent, indirectly infringing and continues to indirectly infringe at least claims 1, 5 and 6 of the '707 patent by knowingly and specifically intending to induce infringement by others (including, without limitation, HP's customers and resellers) and possessing specific intent to encourage infringement by HP's customers and resellers.  HP inkjet printheads are specifically configured according to the claims of the '707 patent, are material parts of the invention, and do not have substantial non-infringing uses.

156.    Slingshot has been damaged by the direct and/or indirect infringement of
HP and is suffering and will continue to suffer irreparable harm and damages as a
result of this infringement.

### Count IV – Infringement of United States Patent No. 7,438,397

157.    The allegations set forth above are re-alleged and incorporated by
reference as if they were set forth fully here.

158.    HP makes, uses, sells, offers to sell and/or imports inkjet printers and
inkjet printhead assemblies in the United States that infringe (literally and/or under the
doctrine of equivalents) at least claim 20 of the '397 patent.  HP commits acts of patent
infringement through the manufacture, use, sale, offer for sale and/or importation of at
least the following products:

**Inkjet printers** including, without limitation, HP DesignJet T100 and T500

Printer Series (e.g., HP DesignJet T120, T130, T520, T530); HP OfficeJet 6100, 6600,

6700, 7110, 7510, 7610, 7612, 9012; HP OfficeJet Pro 276dw MFP, 8600-N911g,

8600-N911n, 8600-N911a, 8610, 8620, 251dw, 8100-N811a 8630; HP OfficeJet Pro

7720, 7730, 7740, 8210, 8216, 8702, 8710, 8715, 8720, 8725, 8728, 8730, 8740, 8745,

9025, 9020, 9018, 9015, 9010.

**Inkjet printhead assemblies** including, without limitation, HP 711; HP OfficeJet

Pro Printer Series Printhead Assembly (for at least the printers listed above); HP

OfficeJet Series Printhead Assembly (for at least the printers listed above).

159.    On information and belief, inkjet printers listed above are sold with setup
ink cartridges that have a limited supply of ink.  On information and belief, setup ink

cartridges are used for initial configuration/calibration and/or proper operation of the printer.  On information and belief, for inkjet printers that come with setup ink cartridges, a user must use a setup ink cartridge the first time that the printer is turned on/initialized.  Setup ink cartridges are marked with the word "Setup" and, in some cases, identify non-setup/replacement ink cartridge(s) that should be used with an inkjet printer once the ink in the setup ink cartridge has been depleted.  Exemplary setup ink cartridges are shown below.



160.    Setup ink cartridges are structurally similar to non-setup/replacement ink cartridges.   On information and belief, once a setup ink cartridge has been used to configure/calibrate a printer, another setup ink cartridge cannot subsequently be used in the printer.   After the ink in the setup ink cartridge is depleted, customers must buy and use non-setup/replacement cartridges to continue to use the printer.

161.    On information and belief, the inkjet printers listed above are also sold with an inkjet printhead assembly.  Inkjet printhead assemblies and ink cartridges can be purchased separately from the inkjet printer.  The inkjet printhead assemblies and ink cartridges are necessary for the operation of the inkjet printers and vice versa.

162.     On information and belief, with regard to the claim elements of the '397 patent, the printhead assemblies of the printers above are structurally similar to each other.  Infringement of the '397 patent by the inkjet printers and inkjet printhead assemblies is demonstrated below using the HP 711/HP DesignJet T100/T500 Series as an example.

163.     HP makes, uses, sells, offers to sell and/or imports the HP DesignJet T100 and T500 Printer Series ("HP T Series"), which includes the HP 711 printhead assembly ("HP 711").  The HP T Series/HP 711 performs a method of increasing the longevity of a printhead.



164.     The HP T Series/HP 711 displaces gas within an ink reservoir.  The HP T Series/HP 711 has 4 separate ink reservoirs.  The gas (air) being displaced is located downstream from an ink filter associated with each ink reservoir.  One ink reservoir is illustrated below.



165.    Gas (air) is located below a metal ball valve that is downstream from an ink filter.



166. The HP T Series/HP 711 implements a gas accumulation area within the ink reservoir below the metal ball valve.



167. The HP T Series/HP 711 withdraws gas from the ink reservoir and inhibits fluid communication between the gas withdrawn and liquid ink within the ink reservoir.

168.    The HP T Series/HP 711 withdraws gas from the ink reservoir by opening

a check valve (metal ball valve) to provide fluid communication between the gas

accumulation area and a gas containment area.



169.    On information and belief, HP has been on notice of the '397 patent at

least as early as the filing and service of this First Amended Complaint.

170.    On information and belief, at least since its post-filing knowledge of the

'397 patent, HP knowingly encourages, and continues to encourage, customers and

resellers to directly infringe one or more claims of the '397 patent, including by HP's

actions that include, without limitation, instructing and encouraging customers to use

(and resellers to use, sell and offer to sell) HP inkjet printers and inkjet printhead

assemblies through HP's user guides/manuals, advertisement, promotional materials

and instructions.

171.    On information and belief, at least since its post-filing knowledge of the

'397 patent, HP knows that the acts HP induced customers and resellers to take

constitute patent infringement and HP's encouraging acts result in direct infringement

by customers and resellers.

172.    On information and belief, HP instructs and continues to instruct customers and resellers to setup, use and troubleshoot HP inkjet printers and inkjet printhead assemblies including, without limitation, on HP's website which provides support on setting up and/or using these products.

173.    On information and belief, HP's customers directly infringe at least claim 20 of the '397 patent through their setup and use of HP inkjet printers and inkjet printhead assemblies.

174.    On information and belief, HP's resellers directly infringe at least claim 20 of the '397 patent through their setup, use, sale and offer for sale of HP inkjet and inkjet printhead assemblies.

175.    On information and belief, HP is in violation of 35 U.S.C. § 271(b) and has been, at least since its post-filing knowledge of the '397 patent, indirectly infringing and continues to indirectly infringe at least claim 20 of the '397 patent by knowingly and specifically intending to induce infringement by others (including, without limitation, HP's customers and resellers) and possessing specific intent to encourage infringement by HP's customers and resellers.  HP's inkjet printhead assemblies are specifically configured according to the claims of the '397 patent, are a material part of the invention and do not have substantial non-infringing uses.

176.    Slingshot has been damaged by the direct and/or indirect infringement of HP and is suffering and will continue to suffer irreparable harm and damages as a result of this infringement.

## Count V– Infringement of United States Patent No. 7,938,523

177.    The allegations set forth above are re-alleged and incorporated by reference as if they were set forth fully here.

178.    HP makes, uses, sells, offers to sell and/or imports inkjet printers and ink cartridges in the United States that infringe (literally and/or under the doctrine of equivalents) at least claims 1-3, 5 and 6 of the '523 patent. HP commits acts of patent infringement through the manufacture, use, sale, offer for sale and/or importation of at least the following products:

**Inkjet Printers** including, without limitation, HP Deskjet 3520, 3521, 3522, 3526; HP OfficeJet 4610, 4620, 4622; HP Photosmart 5510, 5512, 5514, 5515, 5520, 5525, C6340, 6510, 6512, 6515, 6520, 6525, 7510, 7515; HP Photosmart 7520, 7525, D7560, B8550, C6340, C6350, D7560, eStation, Plus, Premium, Premium Fax, Premium TouchSmart Web; HP OfficeJet 6951, 6954, 6962; HP OfficeJet Pro 6960, 6965, 6968, 6970, 6975, 6978; HP OfficeJet 6000, 6500, 6500A, 7000, 7500, 7500A.

**Ink cartridges** including, without limitation, HP 564 black, HP 564 color, HP 564XL color, HP 902 black, HP 902 color, HP 902XL color, HP 920 color, HP 920 XL color (setup and non-setup/replacement cartridges).

179.    On information and belief, inkjet printers listed above are sold with setup ink cartridges that have a limited supply of ink.  On information and belief, setup ink cartridges are used for initial configuration/calibration and/or proper operation of the printer.  On information and belief, for inkjet printers that come with setup ink cartridges, a user must use a setup ink cartridge the first time that the printer is turned

on/initialized.  Setup ink cartridges are marked with the word "Setup" and, in some cases, identify non-setup/replacement ink cartridge(s) that should be used with an inkjet printer once the ink in the setup ink cartridge has been depleted.  Exemplary setup ink cartridges are shown below.



180.    Setup ink cartridges are structurally similar to non-setup/replacement ink cartridges.   On information and belief, once a setup ink cartridge has been used to configure/calibrate a printer, another setup ink cartridge cannot subsequently be used in the printer.   After the ink in the setup ink cartridge is depleted, customers must buy and use non-setup/replacement cartridges to continue to use the printer.

181.    On information and belief, with regard to the claim elements of the '523 patent, the HP 564 black, HP 564 color, HP 564XL color, HP 902 black, HP 902 color, HP 902XL color, HP 920 color and HP 920 XL color ink cartridges are structurally similar to

each other.  Infringement of the '523 patent by the ink cartridges and associated inkjet

printers is demonstrated below using the HP 902 as an example.

182.    The ink cartridges can be purchased separately from the inkjet printer.

The ink cartridges are necessary for the operation of the inkjet printers and vice versa.

183.    HP makes, uses, sells, offers to sell and/or imports a fluid supply tank

(e.g., HP 902) for a micro-fluid ejection head (e.g., a printhead of an HP OfficeJet Pro

6970 Series Printer).



184.    The HP 902 has a body portion for holding a fluid (ink) to be ejected.  The

body portion has a fluid exit port on an exit end thereof and a cover on an opposing end

thereof of the body portion.  The cover having an opening in fluid communication with

atmosphere.





Ink soaked foam

Fluid exit port

Exit end

185.    The HP 902 has an internal vent conduit disposed between the exit end and the cover for removing air adjacent to the fluid exit port and releasing the air through the cover to the atmosphere.



186.    Air space exists in the fluid exit port of the HP 902.  The internal vent conduit is in air flow communication with the air space and the cover.

187.    The internal vent conduit of the HP 902 comprises a channel disposed in an interior side wall of the fluid supply tank.

188.    The cover of the HP 902 has a serpentine vent structure and the internal vent conduit is in air flow communication with the serpentine vent structure.



189.    The HP 902 is removably attached to an ejection head structure

(printhead).



HP OfficeJet Pro 6970 All-in-One Series User Guide, p. 87.

190.    The internal vent conduit of the HP 902 comprises a conduit having cross-

sectional dimensions that provide a non-fluid wettable vent channel.



191.   On information and belief, HP has been on notice of the '523 patent at least as early as the filing and service of the Complaint in this action.

192.    On information and belief, at least since its post-filing knowledge of the '523 patent, HP knowingly encourages, and continues to encourage, customers and resellers to directly infringe one or more claims of the '523 patent, including by HP's actions that include, without limitation, instructing and encouraging customers to use (and resellers to use, sell and offer to sell) HP inkjet printers and ink cartridges through HP's user guides/manuals, advertisement, promotional materials and instructions.

193.   On information and belief, at least since its post-filing knowledge of the '523 patent, HP knows that the acts HP induced customers and resellers to take constitute patent infringement and HP's encouraging acts result in direct infringement by customers and resellers.

194.   On information and belief, HP instructs and continues to instruct customers and resellers to setup, use and troubleshoot HP inkjet printers and ink cartridges including, without limitation, on HP's website which provides support on setting up and/or using these products.

195.   On information and belief, HP's customers directly infringe at least claims 1-3, 5 and 6 of the '523 patent through their setup and use of HP inkjet printers and ink cartridges.

196.   On information and belief, HP's resellers directly infringe at least claims 1-3, 5 and 6 of the '523 patent through their setup, use, sale and offer for sale of HP inkjet printers and ink cartridges.

197.    On information and belief, HP is in violation of 35 U.S.C. § 271(b) and has been, at least since its post-filing knowledge of the '523 patent, indirectly infringing and continues to indirectly infringe at least claims 1-3, 5 and 6 of the '523 patent by knowingly and specifically intending to induce infringement by others (including, without limitation, HP's customers and resellers) and possessing specific intent to encourage infringement by HP's customers and resellers.  HP ink cartridges are specifically configured according to the claims of the '523 patent, are material parts of the invention, and do not have substantial non-infringing uses.

198.    Slingshot has been damaged by the direct and/or indirect infringement of HP and is suffering and will continue to suffer irreparable harm and damages as a result of this infringement.

## JURY DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Slingshot hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Slingshot respectfully requests that the Court enter judgment in its favor and against HP as follows:

a.    finding that HP has infringed one or more claims of the '115 patent;

b.    finding that HP has infringed one or more claims of the '593 patent;

c.    finding that HP has infringed one or more claims of the '707 patent;

d.    finding that HP has infringed one or more claims of the '397 patent;

e.    finding that HP has infringed one or more claims of the '523 patent;

f.   awarding Slingshot damages under 35 U.S.C. § 284, or otherwise

permitted by law, including supplemental damages for any continued

post-verdict infringement;

g.   awarding Slingshot pre-judgment and post-judgment interest on the

damages award and costs;

h.   awarding cost of this action (including all disbursements) and attorney

fees pursuant to 35 U.S.C. § 285, or as otherwise permitted by the law; and

i.   awarding such other costs and further relief that the Court determines to

be just and equitable.

Dated:  September 20, 2019                  Respectfully submitted,

*/s/Raymond W. Mort, III*
Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com
THE MORT LAW FIRM, PLLC
100 Congress Avenue, Suite 2000
Austin, Texas 78701
Tel/Fax: 512-865-7950

*Of Counsel:*
Ronald M. Daignault (*pro hac vice*)
Chandran B. Iyer (*pro hac vice*)
Michael A. Siem (*pro hac vice*)
Jason S. Charkow (*pro hac vice* to be filed)
rdaignault@goldbergsegalla.com
ciyer@goldbergsegalla.com
msiem@goldbergsegalla.com
jcharkow@goldbergsegalla.com
GOLDBERG SEGALLA LLP
711 Third Avenue, Suite 1900
New York, New York 10017
Telephone: (646) 292-8700

Richard Juang (*pro hac vice*)
rjuang@goldbergsegalla.com
GOLDBERG SEGALLA LLP
8000 Maryland Avenue, Suite 640
St. Louis, Missouri 63105
Telephone: (314) 446-3367

Attorneys for Slingshot Printing LLC